IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STEWART TITLE COMPANY, a Texas corporation,<br><br>        Plaintiff,<br><br>  vs.<br><br>INVESTORS FUNDING CORPORATION, a Hawaii corporation,<br><br>        Defendant. | CIV. NO. 09-00455 SOM/KSC<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS DECLARATORY JUDGMENT ACTION |

ORDER GRANTING DEFENDANT'S MOTION
TO DISMISS DECLARATORY JUDGMENT ACTION

I.      INTRODUCTION.

      Defendant Investors Funding Corporation ("IFC") holds a mortgage on two properties, both of which it says were to be covered by a title insurance policy issued by Plaintiff Stewart Title Insurance Company ("Stewart Title").  In fact, Stewart Title issued a title insurance policy listing only one property. When a dispute relating to both properties arose, IFC turned to Stewart Title for a defense and coverage.  Stewart Title offered a defense with respect to only the property listed in the policy. IFC filed a third-party complaint in that underlying action against Stewart Title, seeking a defense and coverage with respect to both properties.  Stewart Title then filed the present action, seeking a declaration that it has no duty to defend IFC with respect to any property not listed in the policy.  IFC moves

for dismissal of Stewart Title's action in light of the ongoing proceeding in state court, which includes IFC's third-party complaint against Stewart Title. This court agrees with IFC and dismisses Stewart Title's action.

II.     BACKGROUND.

In 2003, Walter and Sylvia Chang owned property on Middle Street that they agreed to sell to Steve and Naomi Crouch. Ex. H at 3, attached to Compl. In June 2003, the Crouches formed Hokulani Square, Incorporated ("Hokulani"). Id. The Changs conveyed the Middle Street lot to Hokulani, and the deed and a mortgage by Hokulani in favor of the Changs were recorded in September 2003. Id.

In the fall of 2003, IFC lent Hokulani about $600,000, taking a first lien on the Middle Street property as security. The mortgage from Hokulani to the Changs was subordinated to IFC's interest. Ex. H at 4, attached to Compl.

In 2004, Hokulani wanted to buy property on School Street. Id. IFC agreed to lend Hokulani $1.963 million to refinance the first IFC loan (relating to the Middle Street property), to finance Hokulani's acquisition of the School Street property, and to pay fees and interest. Id. at 5. Again, IFC insisted on a subordination of Changs' interest. Id. IFC says it made the second loan on condition that it have a first mortgage on both the School Street and Middle Street properties.

Motion at 2.

Integrity Escrow and Title Company ("Integrity") handled the escrow of the sale of the School Street property. Ex. A ¶ 8, attached to Motion. IFC says that it sent the necessary paperwork and loan proceeds to Integrity for handling, along with a request for a lender's title insurance policy to insure the priority of its mortgage. Motion at 3. IFC says that Stewart Title authorized Integrity to issue a Stewart Title policy as to the Middle Street property. Motion at 3.

The mortgage by Hokulani in favor of IFC was recorded in January 2005. Ex. A ¶ 4, attached to Motion. A second subordination agreement purportedly signed by the Changs was also recorded in January 2005. Ex. H at 5, attached to Compl.

After the sale was finalized, Stewart Title, through Integrity, issued a title insurance policy to Hokulani, insuring the priority of the mortgage held by IFC. Ex. A, attached to Compl. The policy insured the priority of the mortgage only as to the School Street property, not the Middle Street property. Under the policy, Stewart Title agreed to defend claims against title:

> Upon written request by the insured and subject to the options contained in Section 6 of the Conditions and Stipulations, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an insured in litigation in which any third party asserts a claim adverse to the title or interest as insured, but only as

>     to those state causes of action alleging a
>     defect, lien or encumbrance or other matter
>     insured against by this policy.

Ex. A at 3 ¶ 4(a), attached to Compl.

In September 2005, the Changs filed a state court foreclosure lawsuit relating to the Middle Street lot against, among others, Hokulani Square, Steve Crouch, and IFC. The complaint was amended five times, eventually including claims that the Changs had not knowingly signed the subordination agreements. The Changs challenged the validity of the subordination agreements, claimed that the IFC mortgage was void or voidable, and sought an equitable lien on the School Street property. Ex. E ¶ 57, attached to Compl.

In May 2007, Hokulani filed a chapter 11 petition, and removed the Changs' foreclosure proceeding to Bankruptcy Court. Ex. H, attached to Compl. In February 2008, IFC filed a third-party complaint in the Bankruptcy Court against Integrity, seeking indemnity and contribution for any judgment entered against IFC. Ex. F, attached to Motion. IFC and the Changs filed motions for summary judgment concerning the priority of their liens.

On April 13, 2009, the Bankruptcy Court granted partial summary judgment in favor of IFC. Ex. H, attached to Compl. The court concluded that "IFC is entitled to a summary judgment determining that its mortgage on the School Street property is

superior to the Changs' claims." Ex. H at 25, attached to Compl. The court stated, "IFC is entitled to summary judgment on the issues of fraud in the inducement, lack of consideration, priority of the equitable lien on the School Street property, and equitable subordination." Id. at 3.  The court concluded that, with respect to the Middle Street property, whether the Changs had signed the subordination agreements as a result of fraud in the factum was a factual dispute that precluded summary judgment. Ex. H at 20, attached to Compl.

Stewart Title has been defending IFC against only claims relating to the School Street property, as the title insurance policy lists only the School Street property as insured.  Ex. G, attached to Compl.  IFC seeks to have the policy also cover the Middle Street property.  Ex. A ¶¶ 34-36, attached to Motion (seeking reformation of the policy).

In May 2009, IFC filed a second third-party complaint in Bankruptcy Court, this one against Stewart Title.  Ex. A, attached to Motion.  In this third-party complaint, IFC alleges that it asked Stewart Title for a lender's title insurance policy on both the Middle Street and School Street properties, but Stewart Title only issued insurance on the School Street lot. Id. ¶¶ 8, 9, 11.  IFC asserts claims against Stewart Title sounding in negligence, gross negligence, breach of contract, and bad faith.  IFC seeks reformation of the policy to include the

5

Middle Street property "as the parties originally intended," or seeks an order that Stewart Title "should be ordered to provide insurance coverage on [the Middle Street Lot]." Ex. A ¶ 36, attached to Motion. Stewart Title answered the complaint on June 29, 2009. Ex. G, attached to Motion.

On September 25, 2009, Stewart Title filed the present action in this court. Stewart Title seeks a declaratory judgment stating that:

> Stewart Title: (a) had and has no duty to
> provide a defense to or representation of IFC
> or pay for IFC attorneys' fees and costs for
> defending against the Middle Street claim;
> (b) had and has acted in good faith and is
> not liable to IFC for any damages; and (c) is
> entitled to reimbursement of all legal fees,
> expenses, and costs paid conditionally toward
> IFC's defense of the Middle Street Claim.

Compl. ¶ 30. Stewart Title also seeks a declaratory judgment stating that, if IFC had actual knowledge of matters related to the Middle Street claim, then IFC "is not entitled to a defense or indemnification against the Middle Street Claim." Compl. ¶ 32.

On July 21, 2009, the Changs filed a notice of settlement in Bankruptcy Court and asked the Bankruptcy Court to determine that the Settlement Agreement between the Changs and IFC was made in good faith. Opposition at 6. On December 2, 2009, the court ruled that the Settlement Agreement had been made in good faith. The Bankruptcy Court remanded the proceeding to

state court on December 16, 2009.  Ex. K, attached to Reply. Certain Defendants have appealed the good faith order; appeals are pending in state and federal courts.  The parties have stipulated to stay the briefing in the federal appeals until the state court decides if it has jurisdiction to address the state appeals on the merits.

Before the Bankruptcy Court remanded the case to state court, IFC filed a motion in this court to dismiss or abate Stewart Title's Complaint seeking declaratory judgment. IFC says that, as the matters Stewart Title alleges in the Complaint are already at issue in the action now proceeding in state court, this court should dismiss the action.

III.     STANDARD OF REVIEW.

The Declaratory Judgment Act, 28 U.S.C. § 2201, is a procedural statute that provides a federal remedy for litigants seeking a judicial declaration of rights.  It provides, in relevant part:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

While the Act authorizes a court to provide declaratory

7

relief, a court is not required to do so. <u>Brillhart v. Excess Ins. Co. of Am.</u>, 316 U.S. 491, 494 (1942). A court must first ensure that there is an actual case or controversy before it, and, if an actual case or controversy exists, a court must decide whether to exercise its jurisdiction. <u>Principal Life Ins. v. Robinson</u>, 394 F.3d 665, 669 (9th Cir. 2005). In doing so, a court must balance concerns of judicial administration, comity, and fairness to litigants. <u>American States Ins. Co. v. Kearns</u>, 15 F.3d 142, 144 (9th Cir. 1994). "The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping, and it should avoid duplicative litigation." <u>Gov't Employees Ins. Co. v. Dizol</u>, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc). Other additional, secondary considerations are:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a **"**res judicata**"** advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

<u>Kearns</u>, 15 F.3d at 145 (Garth, J., concurring).

IV.     <u>ANALYSIS.</u>

This court must first assure itself that there is an

8

actual case or controversy.  Then, if an actual case or controversy exists, the court must consider whether it should exercise jurisdiction.  See Robinson, 394 F.3d at 669.

        A.      There is an Actual Case or Controversy.

To the extent Stewart Title denies that it has a duty to defend IFC with respect to claims relating to the Middle Street property, there is an actual, concrete controversy.  "[A] dispute between an insurer and its insureds over the duties imposed by an insurance contract satisfies Article III's case and controversy requirement."  Dizol, 133 F.3d at 1223 n.2.  The dispute before this court revolves around whether Stewart Title is required to defend or cover IFC with respect to the Middle Street property.  As IFC is being sued in state court with respect to title to the Middle Street property, resolution of the coverage dispute will directly affect the parties.  This dispute is not abstract or hypothetical.  See Robinson, 394 F.3d at 671.

At the hearing on this motion, Stewart Title and IFC agreed that there is no dispute that the express terms of the insurance policy do not require Stewart Title to defend or cover IFC with respect to the Middle Street property.  Until the hearing, this court had read Stewart Title's papers as describing a dispute over what the express language of the policy provided.  See Opposition at 11 ("A declaratory judgment on whether Stewart Title had a duty to defend IFC with respect to the Middle Street

Property, albeit a state law issue, depends solely on this Court's review of the plain language of the policy."); Opposition at 14 ("Whether Stewart Title may be liable to IFC for the actions of its policy-issuing agent Integrity is collateral to whether Stewart Title owed a duty to defend IFC under the unambiguous language of the policy.").

This court concludes that the actual dispute concerns whether Stewart Title must defend or cover IFC under any theory, not just under the express policy language. The problem with Stewart Title's characterization is that it presents no controversy at all! Thus, this court should dismiss this matter for lack of subject matter jurisdiction if indeed the case is so limited. Instead, the court recognizes that the parties are disputing whether any actions or intentions do or do not support, for example, an implied contract covering the Middle Street property. Satisfied that there is an actual controversy, the court considers factors the Supreme Court and the Ninth Circuit have identified as important in a determination of whether this court should exercise jurisdiction in this declaratory judgment proceeding. The court concludes that dismissal of this action is warranted.

B.      Discretionary Factors.

The factors that guide the exercise of this court's discretion are enumerated in Brillhart and subsequent Ninth

Circuit decisions.  The district court "should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation."  Robinson, 394 F.3d at 672 (internal quotations and brackets omitted).  The court may also consider whether the declaratory action will settle all aspects of the controversy, whether the action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought for the purposes of procedural fencing; and whether the use of a declaratory action will result in entanglement between the federal and state court systems.  Id.; see also Benevedes v. Gov't Employees Ins. Co., 2009 WL 705541, *2 (D. Haw. Mar. 18, 2009).

          1.      This Case Involves Needless Determination of State Law Issues.

Allowing this case to proceed in this court would result in a needless determination of state law issues.  A district court needlessly determines state law when: (1) there is an ongoing parallel state proceeding regarding the precise state law issue; (2) the area of law was expressly left to the states by Congress; or (3) the lawsuit involves no compelling federal interest.  See Cont'l Cas. Co. v. Robsac Indus., 947 F.2d 1367, 1371 (9th Cir. 1991) overruled on other grounds, Dizol, 133 F.3d at 1227.  However, "at issue for this factor is not merely

11

whether the action raises a state law issue (which is the case for all diversity actions), but rather whether it presents an *unsettled* state law issue." Nautilus Ins. Co. v. K. Smith Builders, Ltd., 2010 WL 346457, *3 (D. Haw. Jan. 29, 2010). Although it is unclear how "unsettled" state law is in this regard, the existence of an ongoing parallel state proceeding, the application of law expressly left to the state, and the absence of any compelling federal interest all indicate that dismissal is warranted.

A state proceeding is parallel to a federal declaratory judgment action when both actions involve the same issues, the same factual circumstances, and the same parties at the time the federal action is filed. See Dizol, 133 F.3d at 1225, 1227 ("It is enough that the state proceedings arise from the same factual circumstances."); see also Benevedes, 2009 WL 705541, *2 (describing cases explaining parallel proceedings).

A parallel state proceeding exists here. Both actions stem from the sale of property and the issuance of a title insurance policy that covered certain property. In state court, IFC says that Stewart Title must defend it against claims regarding the Middle Street lot. In federal court, Stewart Title seeks a judgment that it is not obligated to defend IFC as to those claims. Thus, the same issues, based on the same facts, are present in both courts.

Moreover, this case implicates an area of law reserved for the states: insurance law. Cont'l Cas., 947 F.2d at 1371. Additionally, there is little federal interest in this case. When, "the sole basis of jurisdiction is diversity of citizenship, the federal interest is at its nadir." Id. As this case revolves around state law that is at issue in a parallel state proceeding, this factor points toward dismissal.

     2.  Stewart Title Appears To Be Forum Shopping.

In determining whether to exercise jurisdiction, the court also considers whether the declaratory action was filed as a means of forum shopping, i.e., "filing a federal court declaratory action to see if it might fare better in federal court at the same time the insurer is engaged in a state court action." Am. Casualty Co. Of Reading, Pennsylvania v. Krieger, 181 F.3d 1113, 1119 (9th Cir. 1999). A district court generally should not exercise jurisdiction over a "reactive" declaratory action. See Huth v. Hartford Ins. Co. of the Midwest, 298 F.3d 800, 804 (9th Cir. 2002). Generally speaking, a "reactive" declaratory action is one filed by an insurance company against its insured during the pendency of a nonremovable state court action presenting the same issues of state law. Cont'l Cas., 947 F.2d at 1372.

Here, the Changs (Hawaii citizens) sued IFC (a Hawaii corporation) in state court. As part of that case, IFC sued

13

Stewart Title (a Texas citizen).  That case could not have been removed to federal court because there was not complete diversity and because IFC is a Hawaii citizen.  See 28 U.S.C. § 1441(b) and (c).  Stewart Title now brings a federal action seeking a declaration that it need not defend or cover IFC.

Stewart Title knew about the state proceeding long before filing suit.  Stewart Title filed this action several years after the Changs filed its initial complaint in state court.  Stewart Title also filed its Complaint five months after IFC filed its third-party complaint against Stewart Title.  Thus, by the time Stewart Title filed this suit, it knew that another proceeding had already been initiated to adjudicate the very issues presented here.

Stewart Title argues that the issues are not the same at all.  Stewart Title says this action "seeks a limited, Policy-based ruling on its duty to defend."  Opposition at 13. However, there is no actual dispute that the express terms of the policy do not require Stewart Title to defend IFC with respect to the Middle Street property.  At the hearing, the parties made it clear that they are really seeking resolution of rights going beyond those express terms.  Stewart Title cannot ask this court to rule on a nonissue.  Stewart Title instead appears to be seeking a judgment from this court to be used in its favor in other proceedings.  This factor weighs against the court's

14

retaining jurisdiction over this case.

### 3. The State and Federal Actions are Duplicative.

The court considers whether the present case is duplicative of the state court action. Generally, if there are parallel state proceedings that involve the same parties and issues pending when the federal declaratory relief action is filed, there is a presumption that the federal proceeding is duplicative and that the entire action should be heard in state court. Dizol, 133 F.3d at 1225. When "another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in gratuitous interference if it permitted the federal declaratory action to proceed." Wilton v. Seven Falls Co., 515 U.S. 277, 283 (1995)(internal quotations and brackets omitted).

This case is duplicative of the state proceeding. In state court, IFC asserts that Stewart Title is vicariously liable for any negligence or misconduct of its agent, and that Stewart Title and its agent were negligent, and acted in bad faith. As a result, IFC says that it did not receive the policy it sought. Stewart Title, in this court, seeks a declaratory judgment that it "had and has acted in good faith and is not liable to IFC for any damages." Compl. ¶ 33. That is the same issue before the state court.

Stewart Title says that the issues before this court are separate from the issues before state court. But some of IFC's state-court claims are premised on the assertion that Stewart Title owes a duty to defend. If this court grants the relief Stewart Title seeks--that is, if it holds that Stewart Title has no duty to defend IFC with respect to claims arising from the Middle Street Lot, then IFC's state-law claims premised on the assertion that Stewart Title has a duty to defend may fail. The claims are inherently intertwined. Accordingly, this factor weighs against exercising jurisdiction over this case.

      4.  The Case Would Resolve Only Part of the Controversy.

This court should consider whether the declaratory action will settle all aspects of the case. As a matter of judicial economy, a district court should not entertain a declaratory action when the result would be to try a particular controversy piecemeal, or to try particular issues without settling the entire controversy. See Dizol, 133 F.3d at 1225 n.5. This factor points toward dismissal, as even if this court resolved this controversy, issues and claims between Stewart Title and IFC would remain in the state court proceeding. Thus, any resolution of the declaratory judgment action would not end IFC's dispute with Stewart Title.

          5.        This Action Would Clarify the Parties' Legal Relationship.

A court may consider whether "judgment will serve a useful purpose in clarifying and settling the legal relations in issue." Dizol, 133 F.3d at 1225. As the resolution of this action would tell the parties what obligations and/or rights they have under the insurance policy, this factor weighs in favor of retaining jurisdiction.

          6.        This Action Creates The Possibility of Entanglement.

The state court action will address the same issues as this federal action. Unless one of the actions is dismissed or stayed, there certainly would be some entanglement between the state and federal court if this court retained jurisdiction. This factor weighs against retaining jurisdiction.

V.      CONCLUSION.

Balancing the factors bearing on this court's exercise of jurisdiction over this action, this court declines jurisdiction. The court recognizes that it may either stay or dismiss the action. In deciding whether to enter a stay, the court may consider whether the claims of all parties can be adjudicated in the state court proceeding, and whether necessary parties have been joined. Wilton, 515 U.S. at 283. Given the pendency of an almost identical state court action that can resolve the entire dispute, dismissal is appropriate. This court

grants IFC's motion to dismiss, directs the Clerk of Court to enter judgment for IFC, and orders the closing of this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii May 11, 2010



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Stewart Title Guaranty Company v. Investors Funding Corporation, 09cv00455 SOM/KSC; ORDER GRANTING DEFENDANT'S MOTION TO DISMISS DECLARATORY JUDGMENT ACTION